Martin, C. J.
The defendant city commission exists by virtue of ch. 608, Laws of 1913, as amended, and the county commission, under sec. 59.96 (1), Stats. The powers and duties of each are prescribed by law.
Prior to November, 1955, the state board of health and the state committee on water pollution held public hearings and made an intensive pollution study of the operation of the sewerage system in the Metropolitan Sewerage District of Milwaukee County and the various municipalities in the area. As the result of that study it was found that clear water entering the sewerage system through house sewers at many times interfered with the operation of the sewage-disposal plant, caused setbacks of sewage in home basements, required bypassing of partially treated or raw sewage into the watercourses, and added greatly to the cost of the operation of the system. On November 4, 1955, the state authorities issued an order requiring the defendants to take steps to eliminate as far as possible the infiltration of clear water into the system.
On application of the defendant commissions, the legislature enacted ch. 336, Laws of 1957, authorizing the said commissions to adopt joint rules. Such authority had not existed prior thereto.
After receipt of the order of the state board of health, the defendants engaged a Chicago firm, Alvord, Burdick & Howson, to study and make recommendations on how to *49 reduce the pollution and comply with the said order. The firm’s report, after a year and a half of study, contained a recommendation that, “The house laterals for sanitary sewers should be made of cast iron with hot lead joints extending from the main sewer to a connection with the house plumbing.”
Proposed rules were considered and prepared and presented at a public hearing in January of 1958. Some of the plaintiffs appeared and were given the opportunity to explain or demonstrate the bituminous fiber sewer pipe which they manufacture.
McGraw-Edison has a subsidiary which has an office building in Milwaukee, a plant in South Milwaukee, and a plant for the manufacture of bituminous fiber pipe at Barton, Wisconsin. Pipe manufactured by each of the plaintiffs has been used in Wisconsin. Following the hearing and at the invitation of the defendants, these companies submitted brochures, reports, and other documents dealing with their product; and representatives of the defendants visited the Barton plant to observe the manufacture of bituminous fiber sewer pipe.
The following rule, sec. 1301, was adopted on May 1, 1958, to become effective on November 1, 1958:
“All house or building sewers hereafter connected to sanitary or combined sewers from any structure in the Metropolitan Sewerage District shall be made of extra-heavy cast-iron soil pipe with hot poured lead joints . . .”
Before the rule became effective this action was commenced to enjoin its enforcement.
The trial court found the rule to be arbitrary and unreasonable (1) in that it requires the use of cast-iron pipe in soil conditions where such pipe is not suitable, and (2) in that it prohibits the sale of a suitable product which is, at least in certain situations, equal or superior to cast-iron pipe.
*50 The first finding of the trial court is, in effect, a finding that the rule fails to accomplish the purpose for which it was adopted. That purpose was to prevent or cure excessive infiltration into house sewers.
It should be noted that where infiltration was found, the sewer pipes in use were of vitrified clay with cement joints and the infiltration was through the joints. Cement shrinks when it cures; cracks form, and sewage leaking through the cracks attracts roots which grow inside the sewer. According to the testimony of defendants’ chief engineer and general manager, defendants have had no experience of infiltration due to the use of bituminous fiber pipe, although the evidence shows that a number of house installations of such pipe have been made and are being used in the defendant districts.
Marion Jackson, professor of soils and chemistry at the University of Wisconsin, testified that he examined soil samplings from various places in the defendant districts, making extensive laboratory tests, and found anaerobic conditions which are severely corrosive of cast iron. Defendants challenged this testimony by reference to portions of a study and report by Starkey & Wight, but, as Professor Jackson pointed out, an analysis of the report as a whole corroborates his conclusions as to the relationship of anaerobic condition to corrosion.
Expert witnesses produced by defendants testified they considered cast-iron pipe best for house sewers in that, properly installed, it would reduce infiltration. Mr. Howson, member of the firm upon whose recommendation sec. 1301 was promulgated, admitted that cast-iron pipe is not suitable under some conditions. He testified that a provision of the Milwaukee building and zoning code to the effect that when “acid or soil conditions do not permit the use of cast-iron pipe for house or storm drains, vitrified clay pipe or *51 other approved material shall be used” is sound. He further testified:
“Q. ... I wanted your expert opinion as to whether you didn’t agree that there should at least be some exception for the use of cast-iron pipe before you install it in a soil with a cindery or acid condition which has been the cause of harm. Now, do you agree that there should be such an exception? A. I would agree that if a — if there was a location in which the permit was asked to — was requested to install cast iron in an unusual condition for which it would not be adapted, that consideration should be given to the facts as they actually were and the material selected for it.”
Likewise, O. J. Muegge, Wisconsin state sanitary engineer, called by defendants, testified that he knew of conditions where cast-iron pipe will corrode and that where a soil condition would tend to cause such corrosion a householder should not be required to use it. He admitted that sec. 1301 makes no allowance for such a situation.
There is no real dispute in the evidence that cast-iron pipe is not suitable for use under certain soil conditions which exist in various places in the Milwaukee area. Failure to provide for exceptions to the rule where soil conditions warrant the use of some other material renders the rule unconstitutional. Where conditions are such that cast-iron sewer pipe will more effectively and lastingly prevent excessive infiltration than any other material, it is probably in the interest of public health and welfare to require its use. But where existing conditions render cast-iron pipe no more, or even less, efficacious in that respect than other pipe materials, it is manifestly arbitrary and unreasonable to require it.
The second basis upon which the trial court held the rule was arbitrary and unreasonable was that it prohibited *52 the sale of a suitable product. We are of the opinion that if the rule had contained a procedure for granting an exception to the required use of cast-iron pipe, in those situations in which cast-iron pipe was not suitable, the rule would have been valid even though its effect might be to decrease the sale of the plaintiffs’ product.
It is argued that plaintiffs have failed to show the enforcement of rule 1301 will interfere with and impair their legal rights and privileges. The record shows that all five plaintiff corporations are engaged in the manufacture and sale of bituminous fiber sewer pipe and that the product of each has been sold and used in Wisconsin; that the actual manufacture of said pipe is carried on by one of the companies in Wisconsin; that plaintiffs’ product has been and is sold by plumbing suppliers in the Milwaukee area and has been used in house sewers in that area. The trial court held that plaintiffs have sufficient interest to bring this action, and we agree.
Ch. 336, Laws of 1957, under the authority of which rule 1301 was adopted jointly by the defendants, provides in sec. 5 (h) 1 b, in part:
“Except as provided in sec. 227.05 (3) of the statutes, the exclusive means of judicial review of the validity of a rule shall be an action for declaratory judgment as to the validity of such rule brought in the circuit court for the county in which such city of the first class is located. . . . The court shall render a declaratory judgment in such action only when it appears from the complaint and the evidence presented in support thereof that the rule or its threatened application interferes with or impairs, or threatens to interfere with or impair, the legal rights and privileges of the plaintiff. . . .”
Obviously, the enforcement of a rule which bans plaintiffs’ product in the large and growing Milwaukee metropolitan area would impair the operation and expansion of their *53 business in the future. Prohibition of the use of a suitable and legitimate product certainly interferes with plaintiffs’ right to carry on a lawful business.
By the Court. — Judgment affirmed.
Hallows, J., took no part.